[Crim. No. 2535.   Third Dist.   Nov. 30, 1954.]

THE PEOPLE, Respondent, v. JOSE GARCIA, Appellant.

Jose Garcia, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and Frederick G. Girard, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—Appellant was charged with having in his possession a preparation of heroin in violation of section 11500 of the Health and Safety Code, and was also charged with three prior felony convictions. He pleaded not guilty to the possession of narcotics charge but admitted the prior convictions. Following a verdict of guilty and the denial of probation and of a motion for a new trial, judgment was pronounced against appellant. This appeal is from the judgment and from the order denying appellant's motion for a new trial.

The principal contention of appellant is that the evidence is insufficient to sustain the conviction. Before discussing this contention we shall give a brief summary of the evidence.

On December 1, 1953, at approximately 4 o'clock in the afternoon, two state narcotic officers observed appellant cross-ing Second Street between K and L Streets in the city of Sacramento. The narcotic inspectors immediately stopped their car, and one of the officers jumped out and came up behind appellant who was then entering the Deuce of Hearts, a Sacramento drinking establishment. As appellant entered the bar the officer placed him in custody by grabbing him around the shoulders and holding his arms at his sides. Just prior to his being placed in physical custody, the officer observed appellant throw something from his left hand. The other officer had continually observed appellant as he entered the bar, and saw appellant's left arm make an "out-ward motion . . ., out and back," just prior to his being physically apprehended by his fellow narcotic inspector.

The narcotic inspectors examined the area in the immediate vicinity of the entrance to the bar and found five capsules on the floor of the café, just inside the entrance door. The officer identified the capsules as the objects which he had observed appellant throw from his left hand just prior to his being held in physical restraint. An expert chemist established that the contents of each of these capsules contained heroin.

Appellant was subsequently taken to the State Narcotic Bureau offices in Sacramento, where he requested that he be allowed to converse with the supervising narcotic inspector. Upon being granted this request he then asked the supervising inspector if he could "get him a break" or "Can you do anything for me?" to which the supervisor replied that he could not make any "promises to you in any way whatso-

ever," and that he "couldn't . . . and wouldn't do anything for him. . . ." Appellant then told the supervisor that "he had purchased fourteen capsules of heroin, that he had sold all but five and that he had been arrested with the five . . . that the reason he had been selling it was because he was trying to raise money to leave Sacramento and that was his means of raising money." Subsequently, appellant made an identical statement in the presence of the supervising inspector and one of the arresting narcotic officers. After being denied his request for leniency appellant further stated: "Well then I guess I better have a jury trial and see if I can get out of it."

Appellant took the stand in his own behalf and testified that he had entered the bar to use the lavatory; that he was suddenly grabbed by the narcotic inspectors; and that he did not throw anything from his hand when he entered the café. He denied making any admissions or confessions of guilt while at the State Narcotic Bureau offices, and stated that he was not in the possession of narcotics when placed in custody.

Two men who were in the bar at the time appellant and the narcotic inspector entered and the arrest was made, testified in behalf of the defense. One testified that he had not seen appellant and the narcotic officer enter the establishment but he did see appellant handcuffed and searched. He testified that the narcotic officer looked around the entrance door and stooped over several times but that he "actually didn't see him pick up anything." The other testified that he saw appellant enter the establishment and that he didn't notice him throw anything. On both direct and cross-examination he testified that he was not looking closely and consequently would not have noticed appellant make a throwing motion if such in fact occurred.

Appellant's argument is mainly an attack upon the testimony of the officers, which he asserts is so inherently improbable and unbelievable as to border on perjury. ▮ As was said in *People* v. *Klinkenberg*, 90 Cal.App.2d 608, at page 627 [204 P.2d 47, 613]: "In order to say that a statement is inherently improbable it must appear that what has been related or described could not have occurred." ▮ And as stated in *People* v. *Dragoo*, 121 Cal.App.2d 322, at page 324 [263 P.2d 90]: "A reviewing court cannot reject testimony of a witness that has been believed by the trier of the

fact unless it is a physical impossibility that it be true, or its falsity is apparent without resorting to inferences or deductions.''

Appellant argues that the officer Best would not have grabbed him in the manner he did if he had seen appellant throw something away. However, the testimony was that the officer saw appellant throw something from his left hand just as he was going to apprehend appellant, and identified the capsules as the objects he had seen. There is nothing inherently improbable about the officer first restraining the subject and then searching for the objects thrown away. The defense witnesses other than appellant himself did not directly contradict the testimony of the officers but their testimony was merely to the effect that they did not see the officer pick up anything. Appellant's argument is but an argument as to the weight of the evidence, and it was for the jury to resolve the conflicts in the evidence.

We must, of course, as an appellate tribunal, view the evidence and the inferences which may reasonably be drawn therefrom in a light favorable to the affirmance of the judgment, and so viewing we are satisfied that there is ample evidence to support the judgment.

Appellant's only other contention is that the instructions were inadequate in regard to the standard to be used by the jury in its consideration of a witness' testimony. He attacks the first sentence of the instruction which reads: ''A witness is presumed to speak the truth.'' Appellant asserts that no cautionary provision was made in regard to the bias and prejudice of the witness and that the testimony of the officers was biased and prejudiced just because they were officers. There is no merit in this contention. There is no basis for a holding that the officers were biased or prejudiced as a matter of law and the jury certainly was adequately instructed. The instruction which appellant attacks reads in full: ''A witness is presumed to speak the truth. The presumption that a witness speaks the truth may be repelled by the manner in which he or she testifies, by the character of his or her testimony, or by evidence affecting his or her character for truth, honesty, or integrity, or his or her motives, or by contradictory evidence, and the jury are the exclusive judges of the credibility of the witness.'' This instruction is in almost the exact language of section 1847 of the Code of Civil Procedure.

This and other standard instructions fully instructed the jury as to the weighing of the testimony of witnesses.

The judgment and order are affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 29, 1954.