[Crim. No. 5812. Second Dist., Div. Two. Apr. 3, 1957.]

THE PEOPLE, Respondent, v. FRANK J. PIGG, Appellant.

Angelo L. Baldwin for Appellant.

Edmund G. Brown, Attorney General, and Henry K. Workman, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellant was accused under two counts of having committed burglary and of a prior conviction of robbery. He was convicted of burglary in the second degree. He appeals from the judgment.

While Chester Blevins was present at the apartment of Dale Evan Thomas, the latter telephoned to Patrick Rush concerning the stealing of some property. Immediately Rush and the appellant Pigg visited Thomas and engaged him in conversation with respect to a plan stealthily to enter the offices of the Jenmac Corporation in Gardena in order to obtain its check protector and typewriter. Blevins offered to convey them in his automobile. He entertained a secret purpose; he had a stepdaughter, aged 16 and married, but who had for some time occupied an apartment with Dale Thomas. He planned that if Thomas were arrested, the stepdaughter would return to her mother's care or go back to her husband's home.

After appellant and Rush had procured a paper automobile license and Blevins had pasted it on his car, they drove to Gardena and to the plant of the Jenmac Corporation. Appellant, Rush and Thomas left the automobile and Blevins drove up and down the avenue. The three men broke into the back door, took the typewriter and check protector and returned with them to Mr. Blevin's automobile. Thereupon, the four men proceeded to the Weibel Auto Works on Paramount Boulevard in Long Beach. Having worked there, Thomas knew he could find blank checks to suit their purpose.

After Blevins parked in the rear lot, the other men went to the front where Rush and appellant walked up and down while Thomas broke the window, entered, took the checks and made his exit.

On the following evening, April 21, 1956, Blevins observed a radio car on Valley Boulevard and told its operator, Deputy Sheriff Sergeant LeBerthon that he feared the outcome of certain unlawful acts in which he had participated and he "was anxious over his involvement." After describing the burglaries and his associates and the houses burglarized, he stated that his motive was to protect his stepdaughter; that he considered Thomas a menace to her welfare, and that he feared him for the remainder of his family at home. The officer accompanied Blevins and his wife to the investigators at the sheriff's Temple City station. He had not heard of either of the burglaries and Mrs. Blevins had, to this point, prevailed upon her husband not to report the crimes.

We are thus faced with the duty of determining whether the trial court was correct in holding that Blevins was a feigned, and not an actual accomplice, and whether his testimony was a sufficient corroboration of defendant Rush. The latter had been accused; the accusation had been dismissed and he testified to the facts on behalf of the People. The problem arises out of section 1111 of the Penal Code which provides that a conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the crime charged. ▆▆▆ He is an accomplice who is liable to prosecution for the identical offense charged against the person on trial. Now, Blevins did not suggest a burglary. It was a scheme of Thomas who telephoned Rush of the plan to steal the property. Blevins was merely present when Thomas used the telephone. Immediately Rush and Pigg entered and the four men conversed concerning the proposed burglary. They discussed whether it would be wise for Blevins to accompany them. He drove them to the Gardena plant of the Jenmac Corporation and back to the Weibel Auto Works. At the trial, he testified that his purpose in accompanying the men was to protect his stepdaughter against Thomas and that he reported the events to the deputy sheriff on the following day.

▆▆▆ Inasmuch as Blevins' testimony was adopted and his credibility was a matter for the trial court's determination, his avowed intent in accompanying the burglars is true on

740

this appeal unless its falsity is apparent without resorting to inferences. (*People* v. *Garcia*, 129 Cal.App.2d 251, 253 [276 P.2d 668]; *People* v. *Dragoo*, 121 Cal.App.2d 322, 324 [263 P.2d 90].) The testimony is undisputed that Thomas had lived with the stepdaughter; that Blevins desired to get him convicted of a crime; that he had not originated the idea of a burglary. ■ He was a feigned accomplice and his testimony did not require corroboration. (*People* v. *Finkelstin*, 98 Cal.App.2d 545, 559 [220 P.2d 934]; *People* v. *Griffin*, 98 Cal.App.2d 1, 22 [219 P.2d 519].) ■ It was not necessary for Blevins to consult an officer before joining the burglars. That might have insured his freedom from prosecution, but also where a citizen feigns participation in a burglary and the trial court accepts his explanation of his conduct, he has done nothing contrary to law and his act was not opposed to sound public policy. (*People* v. *Emmons*, 7 Cal.App. 685, 692 [95 P. 1032].) He had not suggested either burglary. He had reported his act to the sheriff within 24 hours after the burglary, before any officer had learned the identity of any participant in the crimes. The sheriff had heard nothing of them and had no suspicion of the actors prior to Blevins' report. Had he failed to acquaint the sheriff's office with the commission of the offenses, they might have remained unsolved. Although the police had made every reasonable effort to ascertain the evildoers, no one had a suspicion of their *identity* prior to Blevins' report to Sergeant LeBerthon. The solution of the crimes was due to his feigned complicity.

Appellant contends that where a person becomes an active participant in a crime, he cannot escape the status of being an accomplice by claiming that his co-actors were criminals and that he merely induced them to break the law that he might effect their convictions, citing *People* v. *Scott*, 1 Cal. Unrep. 68. But Mr. Scott had actually planned the robbery and had held the victim while another beat his head. The court wisely rejected that claim of feigned participation for the reason that it was a case "where personal violence is committed in pursuance of a plan set on foot and accomplished by the immediate agency of the witness."

*People* v. *Wilson*, 76 Cal.App. 688 [245 P. 781], is not pertinent. The facts in their entirety were placed before the jury. It was held that the jury was not obliged to accept as true the defendant's claim that he was a feigned accomplice. While Blevins may not have acted with patriotic or ethical motives, the implied finding is that his purpose was

to insure the detection and punishment of two cat-like burglaries in a metropolitan area. His position is not unlike that of an officer who has feigned complicity in a crime without having been abased by his efforts. His testimony required no corroboration.

Judgment affirmed.

Fox, J., and Ashburn, J., concurred.