[Crim. No. 6846. Second Dist., Div. One. July 29, 1960.]

THE PEOPLE, Respondent, v. HAROLD HAMILTON JACKSON, Appellant.

Harold Hamilton Jackson, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment of conviction on three counts of armed robbery.

In an information filed in Los Angeles County the appellant was charged with four counts of robbery in violation of the provisions of section 211 of the Penal Code. Counts I, II and III had to do with offenses which occurred on July 21, 1958. Count IV had to do with an offense committed on August 16, 1958. Count III was dismissed upon motion of the appellant under the provisions of section 995 Penal Code.

The trial was before a jury and the appellant was found

guilty as charged in counts I, II and IV. The jury also found the offense in each instance to be robbery in the first degree and further found that the appellant was armed at the time of the commission of each of the offenses. A motion for a new trial was denied. Appellant's counsel was relieved from further representation of the appellant. The appeal is "from the denial of a motion for a new trial, and the judgment and sentence rendered against . . ." the appellant.

A résumé of some of the facts is as follows:

Moses Forrest, Jr., was in his store on Central Avenue at about 6:15 p.m. on July 21, 1958. Some friends of his were in the back of his store. A man came from behind Forrest, pointed a gun at him and directed him to hand over his money or he would kill him. Forrest directed the man to take his money and said, ". . . please don't kill me." Forrest looked and saw a second man in the front of the store with a gun. This man was identified as being a person named Douglas. The robber who held the gun on Forrest told Forrest and the friends or visitors of Forrest to drop their wallets and move into the back part of the store. Forrest did as directed. His wallet contained about $105. The visitors and friends likewise dropped their wallets as directed. Douglas, one of the robbers, hit one of the friends of Forrest who was then being robbed, on the head with his revolver. Forrest saw that the two robbers thus far mentioned wore bright colored caps. There was a third robber who stood at the front door of the store and he was identified as Bennie Meyes and he also wore a "beebop" cap. Meyes had a gun and pointed it at some of the people who came into the store and he directed such people to go to the back of the store. The appellant was identified as the person who held the gun on Forrest and who directed the other people to throw their wallets onto the floor. Appellant also was identified as the person who took off his cap and picked up the pocketbooks from the floor and placed them in his cap.

Howard Coleman was one of the persons in the Forrest store on the occasion in question. Coleman threw his wallet which contained about $18 onto the floor pursuant to the directions of one of the robbers and he saw the appellant pick up the wallets and with two other men, run from the store.

On August 16, 1958, Frank Stevenson operated a shoe shining parlor. At about 5:30 p.m. on that date a man who was identified as Douglas, wearing dark glasses, came into the place of business and ordered a lady, who was using the telephone, to hang up. He went around the counter and placed a

gun near the stomach of Stevenson. The appellant stood at the door of the store at that time and after Douglas had taken the money from Stevenson and was on his way out, the appellant said, "Make a move, I will blow your brains out." A third person remained outside of the store. Stevenson identified Meyes as being present. There also was testimony that all three of the participants in the robbery were armed.

On October 10, 1958, some people were engaged in a crap game at an address on Central Avenue. A Mrs. Tubbs was a participant in the game and she saw the appellant and two other men, each of whom was armed, enter the premises where the crap game was in progress. The persons who were engaged in the crap game in the room were directed by the appellant and the other two robbers to lie down on the floor. The appellant approached Mrs. Tubbs, took from her a folder which contained about $22 and placed it into what appeared to be a pillow slip. The appellant started out the doorway; one of the men who had arrived with appellant and who was identified as Bennie Meyes was at the door and he stated to the appellant that Mrs. Tubbs had some more money in her brassiere. The appellant thereupon returned to Mrs. Tubbs, had her turn over, reached in her brassiere and got a billfold which contained about $80.

Appellant testified in effect that he had nothing whatsoever to do with any of the robberies in question and denied being with Douglas or Meyes on July 21 or August 16, 1958. Appellant further stated that he disliked Douglas during the months of July and August and that he did not care for any association with Meyes during the same period. Appellant was unemployed in July, August, September and October of 1958 and was drawing unemployment insurance. The appellant left Los Angeles between October 19th and 25th, 1958, but denied leaving on the 21st of October by reason of the fact that on October 20, 1958, Douglas and Meyes killed a Los Angeles police officer.

Appellant contends that there was error in the trial judge's investigation of some alleged misconduct on the part of the arresting officer and the deputy district attorney for talking with the trial jurors during a recess; that it was error to disallow the reading of certain documents which allegedly supported appellant's motive for leaving the state after the crimes were committed; that it was error for the deputy district attorney to cross-examine appellant about a crime not charged, and inquiring of the appellant if said crime was the reason

for his leaving the state; in admitting evidence of a robbery allegedly committed by the appellant on October 10, 1958, but not charged in the present information; in the conduct of the trial judge in his rulings on objections and admissibility of evidence; and that the evidence of the prosecution was false.

We will consider the appellant's contentions in the order set forth.

The arresting officer, during one of the recesses talked with some of the jurors about some steel construction work which was being accomplished in the hallways of the court building and which work the jurors, spectators and court personnel were observing. In the judge's chambers the arresting officer denied that he had talked to any juror about the case of the appellant. The deputy district attorney who was prosecuting the case volunteered the information at the conference in the judge's chambers that he had talked to a juror about another case. The trial judge stated that he was satisfied about the whole matter and the attorney for appellant, who was present during the conference in chambers stated in effect that he likewise was satisfied. The judge said in concluding the conference, "It has been explored and everything appears to be entirely innocent, as I am sure it would be." Counsel for the appellant made no further comment and presumably agreed with the judge as to his findings and conclusions in the matter.

In *People* v. *Newell*, 192 Cal. 659, 670 [221 P. 622], the following is set forth with reference to a similar contention:

"One of these is the asserted misconduct of the district attorney in conversing with one of the jurors in the case. It appears from the testimony that the district attorney, in the corridor outside of the courtroom, during a recess, and while he was in plain view of the bystanders, engaged in casual conversation with one of the jurors, whom he had previously spoken to at an improvement club meeting. The district attorney denied that he had mentioned the case or the panel of jurors to the juror. The court afforded appellant the fullest opportunity to support his contention and admitted all the testimony offered by appellant bearing on the incident. Upon the showing made, it is manifest there was no foundation for the asserted misconduct, and the court properly declined to take any action."

And, in *People* v. *Robinson*, 146 Cal.App.2d 310, 314 [303 P.2d 633], it is stated:

"Mere conversations between the jurors and officers of the court do not *per se* amount to misconduct. Such conduct, although often unfortunate, does not in every case militate to the determination that a mistrial must be declared. The mere showing of such a communication does not raise a presumption that the jury was improperly influenced. Prejudice must be shown. (Citations.)" (See *People* v. *Cox,* 174 Cal. App.2d 30, 37-38 [344 P.2d 399].)

As a second contention, appellant asserts that it was error to refuse to admit into evidence certain letters which were written while the appellant was in Washington, D. C., and which were for the purpose, so he said, of demonstrating that he had some legitimate business in Washington, D. C. The appellant argues that the letters would show that he was not fleeing from a crime committed in Los Angeles County. One of the letters was dated November 7, 1958, and was from the General Services Administration, and acknowledged the receipt of an earlier letter in which the appellant apparently was attempting to reestablish a civil service rating with the United States Government. The earlier letter in which the appellant attempted to have his civil service matter adjusted was dated October 31, 1958.

The appellant stated that he had left Los Angeles during the week of October 21, 1958. Counsel for the appellant at the time of the offering of the letters into evidence stated in effect that he anticipated that the court would instruct the jury on flight. The judge stated at that time that no instructions were before him on flight and the district attorney said, "we offer no evidence on flight." At that time there was in fact no evidence of flight in the record and the ruling that the letters were inadmissible was in our opinion correct. In spite of what developed later in the cross-examination of the appellant, no instructions on flight were offered or given.

Penal Code, section 1044, provides:

"It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved."

In the cross-examination of appellant the deputy district attorney asked appellant why he left Los Angeles and defense counsel objected. Outside of the presence of the jury the following took place:

"THE COURT: He testified that he did not leave the jurisdiction on account of any crime or any flight, and this cross examination, I think, is proper in asking that.

"MR. HALL: (Counsel for appellant) We have already been precluded by the Court from bringing it out.

"THE COURT: You haven't been precluded at all. The two documents that you offered were not admissible. I took a look at them. I didn't preclude you from asking any pertinent questions of the witness."

It is apparent that the judge's ruling was proper under the circumstances. If flight to avoid detection was in issue, then both of the letters are self-serving in that they were written after the crime was committed and after the flight, if any, to Washington, D. C. The letters were no part of the res gestae.

█ Next we shall consider the third of appellant's contentions. The evidence disclosed that in the robberies charged and in the robbery of October 10, 1958, the appellant worked with Douglas and Meyes. Counsel for the appellant brought out that appellant left Los Angeles for Washington, D. C. during the week of October 20, 1958, and that appellant had gone back to Washington, D. C. to be with his wife and baby and to get back his federal civil service job. Then and then only did the prosecution go into the matter of appellant's leaving the Los Angeles area. On cross-examination of appellant the following occurred:

"Q. In October of '58, you went back there (Washington, D. C.), is that right? A. That is right, sir.

"Q. Well, isn't it true that you left Los Angeles on October the 21st, 1958, because on October the 20th, 1958, Douglas and Meyes killed a police officer, is that correct, and you didn't want to be connected to that crime?"

Counsel for the appellant stated the importance of appellant's testimony with reference to the trip to Washington, D. C. as follows:

". . . From the evidence here, the inference is clear that he left town shortly after the last, shortly after the time of the last robbery, and that it was necessary to extradite him, to return him here to Los Angeles. . . ."

The evidence showed the link between Douglas, Meyes and the appellant. And, even though he stated he was not with either Douglas or Meyes on any of the robberies, the evidence also showed that appellant left the state very shortly after

Douglas and Meyes supposedly had killed a Los Angeles policeman.

In *People* v. *Ormes*, 88 Cal.App.2d 353, 359 [198 P.2d 690], quoting a California Jurisprudence section, it is stated:

". . . 'A witness may be cross-examined for the purpose of testing his accuracy, veracity or credibility, and great liberality is shown in the allowance of questions directed to that end. Thus it is proper to ask questions which are designed to test the knowledge, recollection, interest, mental condition and character of the witness, and likewise to elicit answers which will contradict his testimony.' "

Considering now the fourth contention of appellant: We think there was no error in permitting the evidence of the robbery of October 10, 1958, to be presented to the jury, even though the offense was not charged against the appellant in the information. There was evidence that the appellant was an armed participant and that in other respects the robbery paralleled the evidence of the robberies in July and August of that same year.

Evidence of other similar offenses is admissible on the issue of guilt to show motive and intent. (*People* v. *Coefield*, 37 Cal.2d 865, 869-870 [236 P.2d 570]; *People* v. *Peete*, 28 Cal.2d 306, 314-317 [169 P.2d 924]; *People* v. *McCaughan*, 49 Cal.2d 409, 421-422 [317 P.2d 974].)

Appellant's next contention is to the effect that there were numerous errors in the court's rulings on objections and admissibility of evidence. The items complained of are not presented to this court in any coherent fashion, nor are the Rules on Appeal complied with in any substantial manner. We have, however, read the entire record and after doing so we are convinced that there were no substantial errors committed by the judge in his rulings.

In appellant's last contention he states that the testimony of the prosecution witnesses was distorted, disgraceful and untruthful. There may have been some inconsistencies but we find nothing as indicated by appellant. It was said in *People* v. *Cannon*, 77 Cal.App.2d 678, 688 [176 P.2d 409]:

"Even where the probative facts are undisputed the question as to the inferences to be drawn therefrom is still within the exclusive province of the trial court, it being as much the function of such court to resolve a conflict between opposing inferences as it is to resolve a conflict between contra-

dictory statements of fact, and such a determination, if supported by any substantial evidence, is binding on appeal. (*Tobola* v. *Wholey* (1946), 75 Cal.App.2d 351, 355 [170 P.2d 952] ; *Mah See* v. *North American Acc. Ins. Co.* (1923), 190 Cal. 421, 426 [213 P. 42, 26 A.L.R. 123].) ▆▆ 'Questions as to the credibility of witnesses and the weight to be given their testimony are for the trier of the facts. ▆▆ As said in *Turner* v. *Whittel*, 2 Cal.App.2d 585, 588 [38 P.2d 835] : ". . . Although impeaching evidence in the nature of contradictions or otherwise has been received, it is still the right as well as the duty of the jury to determine to what extent they believe or disbelieve the testimony. (*Estate of Gird*, 157 Cal. 534 [108 P. 499, 137 Am.St.Rep. 131] ; *Secondo* v. *Secondo*, 218 Cal. 453 [23 P.2d 752].) ▆▆ They may likewise give credence to a witness who has falsely testified in part (*Robinson* v. *Robinson*, 159 Cal. 203 [113 P. 155] ), or whose testimony contains contradictions or inconsistencies. (*Bitsekas* v. *Parechanian*, 67 Cal.App. 148 [266 P. 974].) ▆▆ An appellate court is not concerned with the question of preponderance of the evidence but with the single inquiry whether the record contains substantial evidence tending to support the findings assailed. (*Hotaling* v. *Hotaling*, 187 Cal. 695 [203 P. 745] ; *Johnson* v. *Risdon*, 89 Cal.App. 768 [265 P. 505].)' ' (*Hansen* v. *Bear Film Co., Inc.* (1946), 28 Cal.2d 154, 184 [168 P.2d 946].) The evidence herein, when believed by the trial judge, is of sufficient substantiality to warrant a conviction, and under such circumstances an appellate court is precluded from reversing the judgment on the ground of its insufficiency.''

The appellant was identified as a participant in each robbery about which testimony was taken.

Appellant has made no showing that any of the testimony which was introduced in the present case was inherently improbable. (See *People* v. *Mason*, 130 Cal.App.2d 533, 534 [279 P.2d 621] ; *People* v. *Garcia*, 129 Cal.App.2d 251, 253-254 [276 P.2d 668] ; *People* v. *Dragoo*, 121 Cal.App.2d 322, 324 [263 P.2d 90] ; *People* v. *Cahan*, 141 Cal.App.2d 891, 898 [297 P.2d 715].)

▆▆ It does not appear that upon no hypothesis whatever is there sufficient substantial evidence to support a finding of the trier of fact. Under such circumstances this court cannot reverse the judgment. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].)

Appellant has further asked this court to consider matters which are not a part of the present record, namely why he was arrested in the first place. Such matters cannot be raised in this court under the circumstances. (*People* v. *Justice,* 167 Cal.App.2d 616, 622 [334 P.2d 1031]; *People* v. *Spencer,* 170 Cal.App.2d 145, 150 [338 P.2d 484].)

The order denying the motion for a new trial and the judgment are and each is affirmed.

The attempted appeal from the sentence is dismissed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied August 22, 1960.