[Crim. No. 8210. Fourth Dist., Div. One. Apr. 22, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
DOUGLAS JOHN LANDERS, Defendant and Appellant.

COUNSEL

Appellate Defenders, Inc., under appointment by the Court of Appeal, and J. Perry Langford, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Jay M. Bloom and Karl J. Phaler, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

THE COURT.*—Douglas John Landers pleaded guilty to the crime of robbery (Pen. Code, § 211). The court suspended imposition of sentence and granted probation for three years. Later, Landers admitted violating probation; probation was revoked; and he was sentenced to prison for the term prescribed by law for second degree robbery, which is one year to life (Pen. Code, §§ 213, 671).

Landers contends the judgment imposes cruel and unusual punishment, violating the Eighth Amendment to the United States Constitution and article I, section 17, of the California Constitution.

It is apparent from the report of his probation officer[1] that Landers will not rank among infamous brigands. Placing his hand in his jacket pocket and stating he had a gun, he took two bottles of wine, valued at $1.05 per bottle, from a market. He fled to an apartment less than a block from the scene. There, having already imbibed half his booty, he was soon found by police officers. He told the officers he had carried a loaded gun which he hid in a trash can during his brief flight, but the gun could not be found where he said he had concealed it. During interrogation at the robbery division, Landers passed out and was taken to the hospital where his stomach was pumped.

---

*Before Brown (Gerald), P.J., Ault, J. and Cologne, J.

[1] We consider the probation report of January 17, 1974, at the request of Landers' counsel. Rule 12(a), of the California Rules of Court provides in pertinent part: "On suggestion of any party . . . the reviewing court, on such terms as it deems proper, may order . . . the original or a copy of a paper or record on file or lodged with the superior court be transmitted to it . . . and when so transmitted they shall be deemed a part of the record on appeal." The report of the probation officer constitutes a part of the record of the superior court (Pen. Code, § 1203.10). The probation report contains a description of the robbery which was prepared from the reports of the police department.

Landers does not urge a maximum sentence of life imprisonment for second degree robbery constitutes cruel and unusual punishment in *any* case (*In re Lynch,* 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921]; *People v. Wingo,* 14 Cal.3d 169, 176 [121 Cal.Rptr. 97, 534 P.2d 1001]). Rather, he asserts because Penal Code section 211 prohibits a wide range of culpable conduct, with a correspondingly wide range of punishment, the constitutionality of his sentence should be analyzed in accordance with *People* v. *Wingo, supra.* In *Wingo* the California Supreme Court considered Penal Code section 245, subdivision (a), which proscribes assault by means of force likely to produce great bodily injury. The court noted the statute encompassed a wide range of offenses from "conduct virtually indistinguishable from premeditated murder [to] . . . a mere attempt to seriously injure which lacks any specific intent and is completely futile." (*Id.,* at p. 176.) The court held: "[W]hen a defendant convicted under a section encompassing a wide range of conduct challenges the statute as imposing cruel or unusual punishment, judicial review must await an initial determination by the Adult Authority of the proper term in the individual case. When the term is fixed a court can then analyze the constitutionality of the statute as applied. If the Authority, either by omission or by the exercise of its discretion, fails or declines within a reasonable time to set a term, the particular conduct will be measured against the statutory maximum. The *Lynch* criteria will continue to be employed, but analysis under the first test—i.e., the nature of the offense and/or the offender—will turn on the facts and circumstances of the individual case." (*People* v. *Wingo,* 14 Cal.3d 169, 183.)

We agree with Landers the constitutionality of his sentence is controlled by *Wingo.* Like Penal Code section 245, subdivision (a), section 211 proscribes a broad range of conduct. The culpability of a robber may vary with the value and nature of the property stolen. Moreover, the requirement that the taking be "accomplished by means of force or fear" (Pen. Code, § 211) includes a variety of unacceptable behavior. It is therefore not surprising the Legislature has enacted a wide range of penalties for violation of section 211.

■ We conclude, however, Landers' constitutional challenge is premature. ■ It is clear "Habeas corpus is the remedy available to an aggrieved petitioner after his term has been set, or if the Adult Authority fails to fix the term within a reasonable time." (*People* v. *Wingo, supra,* 14 Cal.3d 169, 183.) Challenging a penalty as cruel or unusual on direct appeal is permitted "only if it is shown that the subject statute encompasses a narrow range of behavior which under no

circumstances could constitutionally support the given penalty." (*People* v. *Wingo, supra,* p. 183, fn. 14; see *People* v. *Waters,* 52 Cal.App.3d 323, 332-333 [125 Cal.Rptr. 46].)

We decline to circumvent this direction by taking judicial notice of later action by the Adult Authority (fixing an allegedly invalid primary term of imprisonment). (See Evid. Code, §§ 452, subd. (c); 450.)

"It is elementary that the function of an appellate court, in reviewing a trial court judgment on direct appeal, is limited to a consideration of matters contained in the record of trial proceedings, . . ." (*People* v. *Merriam,* 66 Cal.2d 390, 396-397 [58 Cal.Rptr. 1, 426 P.2d 161].) The Adult Authority action of which Landers complains took place after judgment and is outside the record. It therefore may not be considered on direct appeal. We decline to augment the record to include it.

Anticipating the failure of this evidentiary finesse, Landers argues, if we do not consider the primary term set by the Adult Authority, we should treat his case as one in which the Adult Authority has failed to fix a primary term and measure his conduct against the statutory maximum. In essence, Landers attacks the constitutionality of Penal Code section 1203 et seq. which permit the trial court to suspend the imposition of sentence when placing a criminal on probation. This procedure, it is argued, deprives a defendant of a constitutional right recognized in *In re Rodriguez,* 14 Cal.3d 639, 651, 653-654, footnote 18 [122 Cal.Rptr. 552, 537 P.2d 384], to the prompt fixing of a primary term of imprisonment. We reject Landers' suggestion that when a court suspends imposition of sentence and grants probation it must specify the constitutionally permissible maximum term to which the defendant could be subjected upon revocation and sentencing. The mandate of *In re Rodriguez* is clearly directed to the Adult Authority. The proposed rule would contravene the basic scheme of Indeterminate Sentence Law (see *id.,* p. 645). Certainly, no such pre-incarceration right was recognized in *In re Rodriguez, supra,* 14 Cal.3d 639. Since it is the Adult Authority, and not the trial court, which must promptly fix a primary term, this is not a case in which a term has not been set; and we need not measure Landers' conduct against the statutory maximum sentence of life imprisonment.

Landers' principal concern seems to be that unless a term is promptly fixed on the basis of the crime he committed, the evaluation of

his culpability will be affected by his later conduct on probation. The law requires punishment to be proportionate to individual culpability. Irrelevant, post-conviction factors should not intrude into determination of his punishment (*In re Rodriguez, supra,* 14 Cal.3d 639, 654, fn. 18). Probation violation, like prison conduct and attitude, may be germane to the Adult Authority's decision to grant parole; but that decision should be distinguished from the determination of a primary term. However, if the Adult Authority has failed to distinguish its responsibilities to Landers and has considered his probation violations in fixing his primary term, habeas corpus is the appropriate remedy.

Judgment affirmed.