Opinion
 

 CHRISTIAN, J.
 

 James M. Williamson appeals from a judgment of imprisonment which was rendered after a jury found him guilty of vehicle burglary (Pen. Code, § 459), auto theft (Veh. Code, § 10851) and possession of a concealed dagger. He also appeals from an order revoking probation on a prior conviction of burglary. The new charges arose out of an incident in which appellant was interrupted while in the act of ransacking a motor home which he had broken into. The owner (Kluckhuhn) and two friends (Petik and Passalaqua) tried to capture appellant, but gave up the effort because appellant menaced them with a dagger. Appellant was captured at the scene a few minutes later by a police officer when appellant returned to the vehicle which he had been using. That vehicle had been stolen. In addition to the police officer, four eyewitnesses positively identified appellant.
 

 Appellant contends that it was an abuse of discretion for the trial court to rule that, had appellant taken the stand, a prior burglary conviction could be used for impeachment. (See
 
 People
 
 v.
 
 Rist
 
 (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833];
 
 People
 
 v.
 
 Beagle
 
 (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1].)
 

 The amended information charged appellant with five prior convictions:
 

 1. A 1965 out-of-state conviction for housebreaking and grand larceny.
 

 2. A 1968 conviction for second degree burglary.
 

 3. A 1969 conviction for petty theft.
 

 4. A 1973 conviction for auto burglary.
 

 5. A 1973 conviction for forgery.
 

 
 *211
 
 In addition, the district attorney offered to prove a sixth prior conviction—a federal conviction in 1973 for the interstate transportation of a stolen vehicle (18 U.S.C. § 2312).
 

 In ruling on appellant’s
 
 Beagle
 
 motion, the court stated that the 1965 conviction for housebreaking and grand larceny would not be admitted because it was too remote, the 1969 conviction for petty theft would not be admitted because it was a misdemeanor, and the conviction for auto burglary would not be admitted because it was similar to one of the present charges. The court initially stated that the conviction for interstate transportation of a stolen vehicle would be admissible; however, after further discussion, the court indicated that it might be excluded.
 

 Two prior convictions were found to be admissible: the 1973 conviction for forgery would come in because it was not remote in time and because forgery involves “dishonest conduct” and would therefore bear on appellant’s veracity; the 1968 conviction for second degree burglary would be admitted because it “doesn’t mention auto burglary.” Appellant does not challenge the trial court’s ruling with respect to the dissimilar prior—the 1973 forgery conviction; it is contended, however, that the trial court erred when it announced that it would admit for impeachment purposes the prior conviction for burglary, a crime substantially similar to the crime with which appellant was charged.
 

 Under section 788 of the Evidence Code,
 
 [1]
 
 a prior felony conviction of a witness may be introduced for the purpose of attacking the credibility of that witness. In
 
 People
 
 v.
 
 Beagle, supra,
 
 6 Cal.3d 441 (see also
 
 People
 
 v.
 
 Rist, supra,
 
 16 Cal.3d 211, 218-223, and
 
 People
 
 v.
 
 Antick
 
 (1975) 15 Cal.3d 79, 97-99 [123 Cal.Rptr. 475, 539 P.2d 43]), the California Supreme Court
 
 *212
 

 The 1968 burglary conviction involves an offense which reflects on appellant’s honesty and integrity; it therefore significantly bears on the issue of credibility. (See
 
 People
 
 v.
 
 Obie
 
 (1974) 41 Cal.App.3d 744, 752 [116 Cal.Rptr. 283].) If there had been no dissimilar nonremote prior available for impeachment purposes, the trial court would not have abused its discretion in admitting the 1968 burglary conviction in the present case. (See
 
 People
 
 v.
 
 Boothe
 
 (1977) 65 Cal.App.3d 685, 689 [135 Cal.Rptr. 570].) “No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity.”
 
 (People
 
 v.
 
 Beagle, supra,
 
 6 Cal.3d at p. 453.)
 

 In this case, however, a dissimilar, nonremote prior conviction for forgery, a crime involving honesty and integrity, was available for purposes of impeaching appellant’s credibility if appellant had testified. Where a dissimilar prior is available, strong reasons exist for excluding evidence of the prior burglary conviction which was substantially similar to the crime with which appellant was charged. (See
 
 People
 
 v.
 
 Nelson, supra,
 
 63 Cal.App.3d 11, 20-21.) “A jury which is made aware of a similar prior conviction will inevitably feel pressure to conclude that if an accused committed the prior crime he likely committed the crime charged.”
 
 (People
 
 v.
 
 Rist, supra,
 
 16 Cal.3d 211, 219.) Therefore, the most compelling element pointing toward exclusion is that of a felony conviction
 
 similar
 
 to the offense charged. (See
 
 People
 
 v.
 
 Banks
 
 (1976) 62 Cal.App.3d 38, 44-45 [132 Cal.Rptr. 751].) We conclude that the prejudicial effect of the prior burglary conviction overbalanced its probative value on the issue of credibility, and that it was error to rule that, if appellant should testify, the prosecution would be permitted to
 
 *213
 
 show as impeachment that appellant had been convicted of burglary in 1968.
 

 However, the error was harmless. The jury was not, in fact, informed of appellant’s prior conviction for second degree burglary or of any other prior conviction. Although appellant did not make an offer of proof, it is suggested by appellant that if all the priors had been ruled out he would have testified that, when he was found at the stolen car by the policeman, he was “just walking by the area and saw this car out in the street and decided to do a good deed and push it into the driveway.” Such testimony would not have answered the overwhelming evidence of guilt. Appellant was positively and unshakably identified by four citizen witnesses as the person who burglarized the motor home; each of these witnesses had ample opportunity to observe the intruder. Also, appellant fit the physical description of the intruder given to Officer Baker by the four witnesses. When appellant was arrested near the stolen car, shortly after the burglary, he had in his possession the nine and one-fourth-inch dagger which was identified by three witnesses as the one used by appellant in making his escape. The dagger was also identified by witness Auer, who took special note of the characteristics of the knife when appellant confronted him with it. The clothing appellant wore at trial was also identified as the clothing he was wearing when he was found in Kluckhuhn’s motor home. Even if the prior burglary had been excluded, impeachment with another prior felony would have been proper. The ruling was not prejudicial.
 
 (People
 
 v.
 
 Watson
 
 (1956) 46 Cal.2d 818 [299 P.2d 243].)
 

 Appellant contends that the trial court erred in sustaining the prosecution’s objection to Officer Baker’s testimony as to a statement appellant made to the officer at the time of the arrest. The proffered testimony was as follows: “He told me he was just walking by the area and saw this car out in the street and decided to do a good deed and push it into the driveway.” This statement was offered by defense counsel to prove the truth of the matter asserted in the statement itself; it was inadmissible hearsay. (See
 
 People
 
 v.
 
 Maxey
 
 (1972) 28 Cal.App.3d 190, 198 [104 Cal.Rptr. 466];
 
 People
 
 v.
 
 Murdock
 
 (1960) 183 Cal.App.2d 861, 868 [7 Cal.Rptr. 293];
 
 People
 
 v.
 
 Jackson
 
 (1960) 183 Cal.App.2d 332, 339 [6 Cal.Rptr. 505];
 
 People
 
 v.
 
 Huston
 
 (1958) 163 Cal.App.2d 363, 366 [329 P.2d 334].) Appellant contends, however, that the trial court’s ruling was erroneous since the proffered testimony is admissible under an exception to the hearsay rule. Section 1220 of the Evidence Code provides: “Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in
 
 *214
 
 either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity.” Appellant contends that the proffered testimony of appellant’s statement was admissible under section 1220 because it was against appellant’s interest in that it placed him at the scene of the stolen vehicle. Appellant’s reliance on section 1220 of the Evidence Code is misplaced. Appellant sought introduction of the statement on his own behalf; the prosecution did not offer the declaration against appellant. Therefore, appellant’s hearsay declaration was not made admissible under section 1220 of the Evidence Code because the statement was not “offered against the declarant” as required by the statute. The ruling excluding the evidence was correct. (See
 
 People
 
 v.
 
 Williams
 
 (1957) 151 Cal.App.2d 173, 189 [311 P.2d 117].)
 

 Appellant contends that he was severely prejudiced by certain testimony describing the knife, which Officer Baker removed from appellant’s pocket at the time of arrest, as a replica of a World War II Nazi dagger. There were two references to appellant’s knife as a replica of a World War II Nazi dagger: one of the witnesses to appellant’s flight,. Auer, testified that as an Austrian he recognized that the knife was similar to knives issued during World War II to the Hitler youth in Germany, and that he had seen many similar knives because after the war many people had collected them. Defense counsel objected on the ground that the answer was not responsive. The court allowed the testimony that Auer had seen similar knives before, but ordered that “all the rest of the testimony about the Nazis and the Hitler youth” be stricken as nonresponsive. Auer’s testimony concerning the dagger did not prejudice appellant. There were no questions, comments, or statements which sought to brand appellant as a Nazi or as a member of a neo-Nazi organization. Auer’s testimony only related his own experience to show familiarity with such weapons to buttress his identification of the weapon which was found in appellant’s pocket.
 

 Mitchell Luksich, the prosecution’s weapons expert, also described the dagger as a replica of a Hitler youth dagger, stating that he had seen hundreds of such knives and had himself regularly bought and sold such knives. Defense counsel made no objection to the description provided by Mr. Luksich. (See Evid. Code, § 353; see also
 
 People
 
 v.
 
 Gardner
 
 (1976) 56 Cal.App.3d 91, 102 [128 Cal.Rptr. 101].) Again, there was no question, testimony, or comment which sought to label appellant as a Nazi. The description of the dagger as a replica of a World War II Nazi dagger was intended to establish the expert’s familiarity with such
 
 *215
 
 knives. There was no inference that appellant was in any way connected with the Nazis. Nevertheless, the trial judge,
 
 sua sponte,
 
 cautioned the jury that the description of the weapon as a replica of a Nazi youth dagger must not influence their determination of the case, and that Luksich had used the word “Nazi” only because he had dealt with this type of dagger before. There was no error.
 

 Appellant complains that the trial court should have permitted defense counsel to read excerpts from an article on misidentification during closing argument to the jury. The article which defense counsel sought to read to the jury appeared in Scientific American, volume 231, No. 6 (Dec. 1974), and was entitled
 
 Eyewitness Testimony
 
 by Robert Buckhout.
 

 Out of the jury’s presence, the trial judge heard arguments on the propriety of the defense counsel’s proposed reading of the Scientific American article to the jury. Defense counsel conceded that the article was based on certain scientific experiments in which people were placed in stress situations. However, defense counsel was unable to inform the court as to who the purported expert (Robert Buckhout) was, and as to his qualifications to give expert opinion on the subject of the effects of adrenalin on perception or to conduct scientific experiments on the subject of perception and recall. The thrust of the Buckhout article is summarized in its subheading, “Although [eyewitness] testimony is frequently challenged, it is widely assumed to be more reliable than other kirids of evidence. Numerous experiments show, however, that it is remarkably subject to error.” The trial court ruled that defense counsel could read the article to the jury, but directed that defense counsel not state to the jury that “I quote you from Scientific American” or refer to the author, Buckhout, and “his findings.”
 

 Appellant contends that the article presented matters of common knowledge, with illustrations drawn from common experience, and that, therefore, it was error to prevent counsel from using it in his argument to the jury. (See
 
 People
 
 v.
 
 Love
 
 (1961) 56 Cal.2d 720, 730 [16 Cal.Rptr. 777, 17 Cal.Rptr. 481, 366 P.2d 33, 809].) But the trial court did not prevent defense counsel from arguing to the jury the fact, obvious from common experience, that identifications can be mistaken; neither did the trial court foreclose defense counsel from reading to the jury excerpts from the article which stated matters of common knowledge in words more articulate than counsel’s own. The court did exclude purported expert opinion about scientific theories and experiments which are not matters
 
 *216
 
 of common knowledge, and precluded defense counsel from attributing such material to the results of experiments published in a scientific journal.
 

 Appellant principally relies upon
 
 People
 
 v.
 
 Woodson
 
 (1964) 231 Cal.App.2d 10, 16 [41 Cal.Rptr. 487], and
 
 People
 
 v.
 
 Guzman
 
 (1975) 47 Cal.App.3d 380, 392 [121 Cal.Rptr. 69], in support of his contention that the court unduly restricted his counsel’s closing argument to the jury. In
 
 Woodson,
 
 defense counsel sought to refer in closing argument to a newspaper article which concerned the governor’s pardon of a person convicted of three robberies which were later established to have been committed by another man. The appellate court held that the attorney should have been permitted to refer to the newspaper account of the pardon as “part of legitimate argument that instances of convictions on the basis of mistaken identity are common.” (See
 
 People
 
 v.
 
 Woodson, supra,
 
 231 Cal.App.2d at pp. 15-16.) Quoting
 
 People
 
 v.
 
 Love, supra,
 
 the
 
 Woodson court stated that counsel’s
 
 summation to the jury must be based solely upon “ ‘ “those matters of fact of which evidence has already been introduced or of which no evidence need ever be introduced because of their notoriety as judicially noticed facts” ’ ” and that counsel may refer to matters not in evidence if such matters constitute common knowledge or are illustrations drawn from common experience, history or literature. (231 Cal.App.2d at p. 16.) It is clear that
 
 Woodson
 
 involved a newspaper account of a matter of common knowledge and not an article reporting the results of scientific experiments on perception and recall.
 

 In
 
 People
 
 v.
 
 Guzman, supra,
 
 47 Cal.App.3d 380, 392, the second case upon which appellant relies, the court stated: “Appellant complains that his counsel was unduly restricted in oral argument. It does appear that he was not permitted to refer to magazine and newspaper articles reflecting illustrations of incidents of misidentification, a matter of common knowledge, and which should have been allowed under
 
 People
 
 v.
 
 Woodson
 
 (1964) 231 Cal.App.2d 10 [41 Cal.Rptr. 487], and that he was stopped from reading from a book merely because he was reading and not because the court examined what he intended to read. This violates the rules of
 
 People
 
 v.
 
 Travis
 
 (1954) 129 Cal.App.2d 29 [276 P.2d 193], which allows reading of material stating proper argument in language counsel feels is better than his own.” However, the court continued: “This is of course not to say that counsel may get expert opinion on matters of scientific theories or experiments, which evidence has been excluded, before the jury by the simple expedient of reading so-called scientific literature in argument. To the extent he was restrained from
 
 *217
 
 doing this the trial court’s ruling was proper. To the extent there was error in excessive restriction it was nonprejudicial. Counsel was allowed to fully state these considerations in his own words without reference to supporting authorities.”
 

 In the present case, the trial judge sought only to prevent defense counsel from presenting to the jury scientific experiments and theories which are not matters of common knowledge by the simple expedient of reading from so-called “scientific literature” which defense counsel acknowledged presented experimental findings which were not in evidence. The ruling was not error.
 

 Appellant contends that the penalty legislatively prescribed for first degree burglary, as applied in the present case, constitutes cruel or unusual punishment in violation of article I, section 17, of the California Constitution. The constitutional challenge is premature.
 

 In
 
 People
 
 v.
 
 Wingo
 
 (1975) 14 Cal.3d 169, 183 [121 Cal.Rptr. 97, 534 P.2d 1001], the California Supreme Court held that “when a defendant convicted under a section encompassing a wide range of conduct challenges the statute as imposing cruel or unusual punishment, judicial review must await an initial determination by the Adult Authority of the proper term in the individual case. When the term is fixed a court can then analyze the constitutionality of the statute as applied.” A defendant may then utilize the remedy of habeas corpus to assert that the sentence is disproportionate under the facts and circumstances of his individual case. (See
 
 People
 
 v.
 
 Romo
 
 (1975) 14 Cal.3d 189, 193 [121 Cal.Rptr. 111, 534 P.2d 1015].) Penal Code section 459
 
 [3]
 
 encompasses a wide range of conduct; whether the punishment fits the crime cannot be ascertained until after the punishment has been determined. When the term is fixed, habeas corpus will be appellant’s proper avenue of relief. (See
 
 People
 
 v.
 
 Landers
 
 (1976) 59 Cal.App.3d 846, 849-850 [131 Cal.Rptr. 522];
 
 People
 
 v.
 
 Heideman
 
 (1976) 58 Cal.App.3d 321, 338-339 [130 Cal.Rptr. 349];
 
 People
 
 v.
 
 Cameron
 
 (1975) 53 Cal.App.3d 786, 797-798 [126 Cal.Rptr. 44];
 
 People
 
 v.
 
 Waters
 
 (1975) 52 Cal.App.3d 323, 332-333 [125 Cal.Rptr. 46].)
 

 Additionally, appellant’s constitutional attack fails on another ground. In 1976, the Legislature enacted the Uniform Determinate Sentencing
 
 *218
 
 Act (Stats. 1976, ch. 1139). Under the act, the crime of first degree burglary, formerly punishable by a penalty of five years to life imprisonment, is now punishable by a maximum of four years in prison, with a middle term of three years. (See Pen. Code, § 461, as amended Stats. 1976, ch. 1139.) Therefore, if appellant had been sentenced after chapter 1139 took effect, appellant’s sentence for first degree burglary would have been, at most, four years. The statute will generally have retroactive application.
 
 (People
 
 v.
 
 Reece
 
 (1977) 66 Cal.App.3d 96, 99-100 [135 Cal.Rptr. 754].) Therefore, it is not now appropriate for this court to decide whether appellant’s punishment is so grossly excessive as to violate article I, section 17, of the California Constitution.
 
 (People
 
 v.
 
 Reece, supra,
 
 66 Cal.App.3d at p. 100.)
 

 As noted above, appellant has also appealed from the order of the trial court revoking probation. Appellant claims that he was denied due process at the probation revocation when the trial court refused to allow appellant to present the testimony of his probation officer explaining that appellant was unaware of the fact that he was still on probation. Appellant argues that such testimony would have constituted mitigating circumstances.
 

 The record reveals that defense counsel’s motion in the trial court was in the alternative, requesting either that appellant’s probation officer be called to testify or that the court receive an offer of proof as to his testimony. The trial judge accepted the offer of proof but concluded that the testimony would not alter his decision. It was not an abuse of discretion to revoke probation upon the showing made. (See
 
 People
 
 v.
 
 Baker
 
 {1974) 38 Cal.App.3d 625, 630 [113 Cal.Rptr. 244].)
 

 The judgment of conviction and the order revoking probation are affirmed.
 

 Rattigan, Acting P. J., and Emerson, J„
 
 *
 
 concurred.
 

 A petition for a rehearing was denied June 28, 1977, and appellant’s petition for a hearing by the Supreme Court was denied August 4, 1977.
 

 Evidence Code section 352: “The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.” (Stats. 1965. ch. 299. § 352.)
 

 [1]
 

 Evidence Code section 788: “For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony unless:
 

 “(a) A pardon based on his innocence has been granted to the witness by the jurisdiction in which he was convicted.
 

 “(b) A certificate of rehabilitation and pardon has been granted to the witness under the provisions of Chapter 3.5 (commencing with Section 4852.01) of Title 6 of Part 3 of the Penal Code.
 

 “(c) The accusatory pleading against the witness has been dismissed under the provisions of Penal Code Section 1203.4. but this exception does not apply to any criminal trial where the witness is being prosecuted for a subsequent offense.
 

 “(d) The conviction was under the laws of another jurisdiction and the witness has been relieved of the penalties and disabilities arising from the conviction pursuant to a procedure substantially equivalent to that referred to in subdivision (b) or (c).” (Stats. 1965. ch. 299. § 788.)
 

 [3]
 

 Penal Code section 459: “Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, railroad car, trailer coach as defined by the Vehicle Code, vehicle as defined by said code when the doors of such vehicle are locked, aircraft as defined by the Harbors and Navigation Code, mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary.”
 

 *
 

 Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.