[Civ. No. 3377. Fifth Dist. Jan. 26, 1978.]

MARILYN BOSCO, Plaintiff and Appellant, v.
THE JUSTICE COURT FOR THE EXETER-FARMERSVILLE
JUDICIAL DISTRICT OF TULARE COUNTY,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

**COUNSEL**

Charles B. Flood III, Public Defender, Walter L. Gorelick, Assistant Public Defender, and Mark E. Cutler for Plaintiff and Appellant.

Paul Halvonik, State Public Defender, Gary S. Goodpaster, Chief Assistant State Public Defender, Mark L. Christiansen and Michael Lee Pinkerton, Deputy State Public Defenders, as Amici Curiae on behalf of Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General,

Willard F. Jones and William George Prahl, Deputy Attorneys General, for Real Party in Interest and Appellant.

No appearance for Defendant and Respondent.

## OPINION

**HOPPER, J.**—We here consider the constitutionality of Health and Safety Code section 11550.[1] The section, which proscribes a broad range of conduct, states: "No person shall use, or be under the influence of any controlled substance which is (1) specified in subdivision (b) or (c) of Section 11054, specified in paragraph (10), (11), (12), or (17) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055 or (2) which is a narcotic drug classified in Schedule III, IV, or V, excepting when administered by or under the direction of a person licensed by the state to dispense, prescribe, or administer controlled substances. It shall be the burden of the defense to show that it comes within the exception. Any person convicted of violating any provision of this section is guilty of a misdemeanor and shall be sentenced to serve a term of not less than 90 days nor more than one year in the county jail. The court may place a person convicted hereunder on probation for a period not to exceed five years and shall in all cases in which probation is granted require as a condition thereof that such person be confined in the county jail for at least 90 days. In no event does the court have the power to absolve a person who violates this section from the obligation of spending at least 90 days in confinement in the county jail."

Respondent was charged in the justice court with a violation of section 11550. She subsequently moved for diversion pursuant to Penal Code section 1000. The justice court denied the motion. Respondent then demurred to the complaint on the grounds that section 11550 was unconstitutional because it was vague and because the mandatory 90-day minimum sentence required upon conviction constituted both cruel and unusual punishment and a denial of equal protection of the law. The demurrer was overruled. Respondent sought a writ of prohibition and/or mandamus in the superior court, which was granted.

---

[1]Code references herein, unless stated differently, are to the Health and Safety Code.

In its order granting the writ, the court found the mandatory sentencing provision of section 11550: (1) was unconstitutional because it constituted cruel and unusual punishment, (2) was unconstitutional because it violated equal protection, (3) was not unconstitutionally vague, and (4) was severable from the remainder of the statute. The People appeal from the order, contending that the superior court erred in ruling that the statute was unconstitutional, and respondent cross-appeals, contending that the court erred in ruling that the statute was not vague and that the penalty was severable from the remainder of the statute.

When a person accused of violating section 11550 challenges the statute as imposing cruel or unusual punishment and a denial of equal protection (or any of such grounds) judicial review should ordinarily await conviction and sentencing in the individual case. The accused in this case has not even gone to trial. The criteria of *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921] apply, but analysis under the first technique (the nature of the offense and/or the offender) will turn on the facts and circumstances of the individual case (see *People* v. *Wingo* (1975) 14 Cal.3d 169, 183 [121 Cal.Rptr. 97, 534 P.2d 1001]; see also *People* v. *Williamson* (1977) 71 Cal.App.3d 206, 217 [139 Cal.Rptr. 222]; *People* v. *Landers* (1976) 59 Cal.App.3d 846, 849 [131 Cal.Rptr. 522]; *People* v. *Waters* (1975) 52 Cal.App.3d 323, 333 [125 Cal.Rptr. 46]). Nevertheless, since all parties have extensively briefed the subject involved, and the subject matter is of statewide importance, in the interest of judicial economy we address the merits.

As the California Supreme Court has said: "We recognize that in our tripartite system of government it is the function of the legislative branch to define crimes and prescribe punishments, and that such questions are in the first instance for the judgment of the Legislature alone." (*In re Lynch, supra,* 8 Cal.3d 410, 414.) "Such legislative authority is ultimately circumscribed inter alia by the constitutional prohibition against cruel or unusual punishment [citations] and it is a responsibility of the judiciary 'to condemn any violation of that prohibition.' " (*In re Grant* (1976) 18 Cal.3d 1, 6 [132 Cal.Rptr. 430, 553 P.2d 590].)

■ The applicable constitutional provision is article I, section 17, of the California Constitution, which prohibits cruel or unusual punishment. That constitutional limitation is violated if a punishment " 'is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity' " (*In re*

*Foss* (1974) 10 Cal.3d 910, 919 [112 Cal.Rptr. 649, 519 P.2d 1073], citing *In re Lynch, supra,* 8 Cal.3d 410, 424). Our state Supreme Court has set forth three distinct techniques to aid in implementing that standard.[2] The three techniques involve (1) the nature of the offense and the offender, with particular regard to the degree of danger both present to society; (2) a comparison of the questioned punishment with punishments in California for more serious offenses; (3) a comparison of the challenged penalty with punishment in other jurisdictions for the same offense. We examine the 90-day mandatory provision using the *Lynch* tests.

We first consider the nature of the offense and the offender. Section 11550 is not only poorly drafted,[3] but its mandatory minimum sentence is arguably unsound legislation.[4] However, that is a question of public policy for the Legislature; unless section 11550 is unconstitutional,[5] the

---

[2]These are guidelines for inquiry and not absolute rules for decision (*People* v. *Serna* (1975) 44 Cal.App.3d 717, 719 [118 Cal.Rptr. 904]).

[3]For example, it refers to narcotic drugs specified in schedule III, IV or V. Yet no narcotic drugs are listed in schedule IV. See also footnote 6, *infra.*

[4]See, e.g., 2 National Commission on Reform of Federal Criminal Laws, Working Papers in Report on Drug Offenses (1970) pages 1111-1112. ". . . Mandatory minimum penalties are clearly undesirable. While mandatory minimum penalties and restrictions on probation and parole are defended as deterrents, . . . studies point out that, as they actually operate, the certainty of punishment they supposedly offer is illusory . . .

"Another argument in favor of mandatory minimum sentences in narcotic cases in particular is that they provide leverage, which will induce a suspect to cooperate with law enforcement. It is submitted, however, that, if he fails to cooperate, it is inappropriate to subject him to punishment which is not warranted by the seriousness of his offense, the need to rehabilitate or incapacitate him, or by considerations of deterrents in general prevention."

See also American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures (1967) (std. 2.1(c)); President's Commission on Law Enforcement and Administration of Justice (1967) The Challenge of Crime in a Free Society, Task Force Report: Narcotics and Drug Abuse 11; Rubin, Law of Criminal Correction (2d ed. 1973) chapter 4, section 7; Eaglin and Partridge, An Evaluation of the Probable Impact of Selected Proposals For Imposing Mandatory Minimum Sentences in the Federal Courts (1977); "No one should assume that any judicial outcome can be made truly 'mandatory'—discretion removed from one place in the criminal justice system tends to reappear elsewhere in it." Wilson, Thinking About Crime 187 (1975).

[5]See Annotation, 33 A.L.R.3d 335. The law review literature on cruel and unusual punishment is rapidly increasing. (See, e.g., Wheeler, *Toward a Theory of Limited Punishment* (1972) 24 Stan.L.Rev. 838; Wheeler, *Toward a Theory of Limited Punishment II: The Eighth Amendment After Furman v. Georgia* (1972) 25 Stan.L.Rev. 62; Mosk, *The Eighth Amendment Rediscovered* (1968) 1 Loyola L.A. L.Rev. 4; Comment, *California Health and Safety Code Section 11550: Is A Ninety-Day Mandatory Minimum Jail Term A Cruel or Unusual Punishment?* (1977) 11 U.S.F. L.Rev. 622; Comment, *California's Cruelty Criteria: Evaluating Sentences After In Re Lynch* (1974) 25 Hastings L.J. 636.)

judiciary should not pass judgment upon the statute. The statute covers a wide range of conduct. Both "using" and "being under the influence" of a controlled substance are prohibited. While the drugs listed include primarily opiates and codeine derivatives, a few others are listed.[6]

Respondent poses an extreme example to demonstrate the cruel and unusual nature of the mandatory sentencing in section 11550: If a person had a tooth pulled and was given several codeine tablets by his dentist, and then his wife took one of the tablets for a bad headache, she would come within the provisions of section 11550 and, if charged and convicted, would have to be sentenced to 90 days in jail. Respondents' hypothetical naively disregards reality. With the large number of pending cases with more priority, we are convinced that the prosecutor would most likely not even file a complaint. But even if the charges were filed, a judge would probably choose to dismiss the complaint in the interests of justice as being de minimis. Finally, should a draconian judge be assigned the case, diversion under Penal Code section 1000 would occur. In fact, we believe that failure to divert in such a situation would be a gross abuse of discretion. Thus, respondent has elevated a lilliputian example to brobdingnagian stature. The assumption that even the innocent housewife is covered by the statute fails to take into consideration the entire legislative scheme. Clearly, the mandatory nature of section 11550 does not entirely divest the trial court of its discretion in disposing of a case. Not only can the court invoke the Penal Code section 1000 diversion program,[7] but it is also required to initiate

None of the commentators, however, discuss what length of time may be permissibly mandatory if 90 days is impermissible. Is 60 days, 30 days, or 2 days? There are some out-of-state decisions upholding mandatory minimums. (See, e.g., *People v. Broadie* (1975) 37 N.Y.2d 100 [371 N.Y.S.2d 471, 332 N.E.2d 338], analyzed in Note, 25 DePaul L.Rev. 193 (see also *People v. Weiss* (1974) 78 Misc.2d 792 [358 N.Y.S.2d 267, 270 citing a large number of federal cases]), *State v. Shearin* (1974) 272 Md. 502 [325 A.2d 573]; *State v. Normand* (La. 1973) 285 So.2d 210; *State v. Farmer* (Me. 1974) 324 A.2d 739.)

[6]Thus, marijuana was eliminated from the statute by the 1975 amendment, but tetrahydrocannabinol (the active ingredient in marijuana) remains, as does peyote and mescaline. However, amphetamines, barbiturates, hallucinogens (e.g., LSD), and the dangerous PCP (angel dust) are excluded from its proscription and penalty. Contrary to the statement of amicus curiae, phenobarbital is not included in section 11550. While phenobarbital and other depressants are listed in schedule IV (§ 11057), they are not narcotics because narcotic drugs are specifically defined in section 11019. Hence, schedule IV does not appear to include statutorily defined narcotic drugs. Consequently, the use of the word "narcotic" in section 11550 is imprecise and misleading. This confusion is further compounded by the effect of section 11032.

[7]A defendant is eligible for diversion under Penal Code section 1000 if all of the following apply:

"(1) The defendant has no conviction for any offense involving controlled substances

CRC proceedings in those cases when it appears that the defendant is addicted or in imminent danger of becoming addicted. Thus, only those who do not qualify for (or are unwilling to accept)[8] diversion under Penal Code section 1000 or are denied CRC commitment and are convicted under section 11550 face the 90-day minimum. Such persons do not appear to us to be the first-offender housewife contemplated by respondent.

Recent legislation and the passage of time has substantially eliminated the argument that the defendant charged with section 11550 who has been previously convicted of possession of small amounts of marijuana might be excluded under Penal Code section 1000. First of all, marijuana is no longer included in section 11550. Secondly, sections 11361.5 and 11361.7 provide for destruction of records as to possession of small amounts of marijuana and thus a person previously convicted of such an offense will no longer be ineligible for diversion.

Respondent raises another specter of injustice she believes possible under section 11550 that is, at first blush, persuasive. Upon closer analysis, however, her example is misleading. The hypothetical poses the following: Two persons in a vehicle are both under the influence of a controlled substance. One, the driver, is charged with driving under the influence, while the other, the passenger, is charged with section 11550. The passenger, if convicted, faces a mandatory 90 days, while the driver does not. However, that apparent discrepancy results solely from the fact of the charge selected by the prosecutor. The driver could also have been charged with section 11550. Furthermore, unlike the passenger charged with section 11550, the driver, charged with a Vehicle Code violation, faces driver license revocation and other penalties and would *not* be eligible under Penal Code section 1000 *as to the Vehicle Code charge.* Thus, the potential 90-day term imposed upon the passenger is not as

prior to the alleged commission of the charged divertible offense.

"(2) The offense charged did not involve a crime of violence or threatened violence.

"(3) There is no evidence of a violation relating to narcotics or restricted dangerous drugs other than a violation of the sections listed in this subdivision.

"(4) The defendant's record does not indicate that probation or parole has ever been revoked without thereafter being completed.

"(5) The defendant's record does not indicate that he has been diverted pursuant to this chapter within five years prior to the alleged commission of the charged divertible offense.

"(6) The defendant has no prior felony conviction within five years prior to the alleged commission of the charged divertible offense."

[8]If the reason for disqualification from the effect of Penal Code section 1000 is refusal to accept diversion, then that is a voluntary act by the defendant which cannot enlarge the 90 days to the status of being cruel or unusual.

severe as it might at first seem, when compared to the punishment imposed upon the driver.

As the California Supreme Court said in *People* v. *Superior Court (On Tai Ho)* (1974) 11 Cal.3d 59, 61 [113 Cal.Rptr. 21, 520 P.2d 405]: ". . . diversion permits the courts to identify the experimental or tentative user before he becomes deeply involved with drugs, to show him the error of his ways by prompt exposure to educational and counseling programs in his own community, and to restore him to productive citizenship without the lasting stigma of a criminal conviction."

While the prosecutor has the sole authority to determine a defendant's eligibility for diversion in the first instance (*Sledge* v. *Superior Court* (1974) 11 Cal.3d 70, 74 [113 Cal.Rptr. 28, 520 P.2d 412]), the defendant has the right to appeal any subsequent conviction on the grounds that the eligibility decision was inappropriate (*id.,* at p. 76). The criteria for ineligibility was "intended by the Legislature to render ineligible for the diversion program a relatively limited class of persons, i.e., those who are dealing in illegal narcotics but who have never previously been convicted of any drug offense and whom the district attorney cannot or does not choose to charge with trafficking." (See *Sledge* v. *Superior Court, supra,* at p. 75.) The Legislature's overriding purpose in the diversion statute is meant "to facilitate its broader aim of conducting an unusually liberal experiment in rehabilitation by encouraging the broadest possible participation in the drug treatment programs." (*Morse* v. *Municipal Court* (1974) 13 Cal.3d 149, 158 [118 Cal.Rptr. 14, 529 P.2d 46].) Thus, diversion applies at any time before commencement of the trial and should be free of restrictive conditions not actually written into the statute (*id.,* at p. 160). The burden is upon the district attorney to make an eligibility decision early in the proceedings (*People* v. *Haycock* (1975) 45 Cal.App.3d 90, 92-93 [119 Cal.Rptr. 179]). Here the district attorney did so, but for some reason the court did not divert respondent. Since we are not privy to why diversion was denied, we can only assume that it was for a proper reason. In fact, an improper reason would be an abuse of discretion (see *Harvey* v. *Superior Court* (1974) 43 Cal.App.3d 66, 69-70 [177 Cal.Rptr. 383]). We cannot say that it is unreasonable to conclude that the same personal and social factors involved which resulted in denial of diversion also warrant the mandatory minimum incarceration if conviction took place.

We agree with the observations of the court in *People* v. *Davis* (1966) 240 Cal.App.2d 496, 501 [49 Cal.Rptr. 663]: "Narcotics addiction is a

process. (*People* v. *Victor,* 62 Cal.2d 280, 301 [42 Cal.Rptr. 199, 398 P.2d 391].) At different stages the symptomatic effects of the process are different. (See *Ibid.* pp. 301-304.) The object of the statute is to proscribe a use of narcotics that is an activating part of the process of addiction whatever may be the state of that process at the time of their use. The provision making it an offense to be under the influence of narcotics must be construed in light of this object. So construed, the statute applies to every person who, following the unlawful use of narcotics, is under the influence thereof in any detectable manner. The symptoms of influence are not confined to those commensurate with misbehavior, nor to demonstrable impairment of physical or mental ability. (*Morales* v. *United States,* 344 F.2d 846, 850.) By making it an offense to be under the influence of narcotics the statute facilitates enforcement of the proscription against use."

By setting the 90-day minimum the Legislature hoped to prevent, or at least reduce, the use of certain substances and thus protect society from the effects of such use. A large percentage of thefts, burglaries and robberies result from the need for money with which to purchase heroin. The Legislature may very well consider mandatory incarceration as some effort at prevention of such crimes. Certainly mandatory incarceration does deter distribution to a defendant for at least the 90-day period. Nor can we say that a 90-day mandatory minimum does not serve a legitimate rehabilitative purpose and act as a possible deterrent to the defendant becoming an addict. As the Legislature declared in section 11554: "The rehabilitation of persons addicted to controlled substances and the prevention of continued addiction to controlled substances is a matter of statewide concern."

Just because other statutes may not be as harsh does not make section 11550 cruel or unusual punishment. Leniency as to one charge does not transform a reasonable punishment in another case to a cruel one in the instant case, or vice versa. (*Howard* v. *Fleming* (1903) 191 U.S. 126 [48 L.Ed. 121, 24 S.Ct. 49].) The Legislature can reasonably, in light of the danger of opiate use, single out that offense insofar as misdemeanors are concerned for a mandatory sentence to cut down on, or at least stall, the drug traffic. In facing a multitude of evils, the Legislature may consider such remedy as it deems, in its discretion, appropriate to the circumstances.

The mandatory 90-day sentence does not punish status or a condition of addiction. The punishment imposed under section 11550 is for the use

of or being under the influence of the specified controlled substance, i.e., an act, as opposed to a condition (see *In re Foss, supra,* 10 Cal.3d 910, 922; see also *Robinson* v. *California* (1961) 370 U.S. 660 at p. 667 [8 L.Ed.2d 758 at p. 763, 82 S.Ct. 1417], stating in dicta that 90 days in the abstract is not cruel and unusual punishment).

Section 11550 imposes a mandatory minimum regardless of prior offenses, unlike the mandatory enhancement of minimum parole ineligibility condemned by the plurality in *In re Grant, supra,* 18 Cal.3d 1 (see particularly pp. 9-11).

Denial of the right to probation (and in one sense a mandatory minimum is a denial, at least for the minimum period of incarceration) is not considered cruel or unusual punishment (see *People* v. *Westoby* (1976) 63 Cal.App.3d 790, 798 [134 Cal.Rptr. 97]; see also Pen. Code, §§ 1203.06 and 1203.07).

In addition, we note that the California Supreme Court has declined to declare unconstitutional as cruel or unusual punishment *consecutive* mandatory three-year minimum sentences before parole eligibility (*In re Adams* (1975) 14 Cal.3d 629, 637 [122 Cal.Rptr. 73, 536 P.2d 473]). We recognize that the mandatory minimum parole provisions applied in *Adams* because he was an unsuitable candidate for probation as a result of the court's discretion to impose consecutive sentences. However, as previously noted herein, we believe that, with exceptions not shown to apply by the record in this case, the accused who is not diverted would warrant at least the 90-day mandatory minimum.

Furthermore, because the accused in this case was considered for diversion and the record does not show that she demonstrated an unwillingness to be diverted, we are not impressed with her hypothetical argument about Penal Code section 1000 not applying to the eligible person who is unwilling to be diverted. Thus, we hold that, considering the nature of the offense and the offender, section 11550 does not constitute cruel and unusual punishment.

Turning now to the other techniques of *Lynch,* we agree that their application to section 11550 makes it suspect. Section 11550 appears to be the only misdemeanor in California which carries a mandatory minimum as to first offenders (subject, as previously indicated, to Pen. Code, § 1000). While several misdemeanor statutes do carry mandatory minimums, the trial judge does have the authority to strike the priors

(see *People* v. *Tenorio* (1970) 3 Cal.3d 89, 95 [89 Cal.Rptr. 249, 473 P.2d 993]). Real party is correct that first-offense misdemeanors often carry collateral punishment such as registration as sex or narcotic offenders,[9] loss of driver's license and the like. Real party is also correct that absolute symmetry in punishments is not required as long as the range is reasonable (*People* v. *Gardner* (1976) 56 Cal.App.3d 91, 99 [128 Cal.Rptr. 101]). As to the third technique, real party concedes that section 11550 is suspect and that only Arizona provides for a mandatory minimum.[10] However, real party contends that the techniques are not mechanical—they are not conclusive or dispositive—but only grounds for suspecting the constitutionality of the statute. We agree. (*People* v. *Wingo, supra,* 14 Cal.3d 169, 179; *People* v. *Carbonie* (1975) 48 Cal.App.3d 679, 688, fn. 8 [121 Cal.Rptr. 831]; *People* v. *Serna, supra,* 44 Cal.App.3d 717, 720).

To recapitulate, while under the second and third techniques the 90-day mandatory is suspect, under the first technique the mandatory 90 days is not so disproportionate to the offense that it is unconstitutional.

No case has been called to our attention holding a one-year minimum to be cruel or unusual punishment.[11] We do not suggest that a one-year mandatory minimum for misdemeanors would in all cases be constitutional, e.g., such a mandatory minimum for violating a statute such as Penal Code section 372a (expectorating in a public place) would be clearly unconstitutional. While *In re Grant, supra,* 18 Cal.3d 1 is only binding on us as to section 11360 (sale of marijuana) (see *In re Williams* (1977) 69 Cal.App.3d 840, 843 [138 Cal.Rptr. 384]), the lead opinion is instructive in that it concluded that the Health and Safety Code provisions precluding parole considerations for a minimum of five years or more for recidivist narcotic offenders was cruel or unusual punishment. Just as the lead opinion suggests that under 5 years was not cruel or unusual punishment, we similarly conclude that a 90-day mandatory sentence for section 11550 is not cruel or unusual punishment. We cannot say that the 90-day mandatory minimum is "so disproportionate to the crime for which it is inflicted that it shocks the

[9]Those convicted of section 11550 itself must also register under section 11590.

[10]The mandatory minimum in Arizona is also 90 days. (Ariz. Rev. Stats., § 36-1062.) However, it appears that the court may suspend with compulsory treatment any first offender. (See Ariz. Rev. Stats., § 36-1062.02, subd. E.)

[11]Using the *Lynch* tests, the Massachusetts Supreme Court has held constitutional a mandatory one-year minimum sentence for the crime of carrying a firearm without a license (*Commonwealth* v. *Jackson* (1976) — Mass. — [344 N.E.2d 166]; see also 57 B. U.L.Rev. 96 (1977)).

conscience and offends fundamental notions of human dignity" (*In re Lynch, supra,* 8 Cal.3d 410, 424).

As the court said in *Lynch* at pages 423-424: "Whether a particular punishment is disproportionate to the offense is, of course, a question of degree. The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible. The judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty 'out of all proportion to the offense' [citations], i.e., so severe in relation to the crime as to violate the prohibition against cruel or unusual punishment."

In our opinion the 90-day mandatory minimum is simply not so excessive or grossly disproportionate or for such a substantial period of time as to shock the moral sense of the people. Even though we may philosophically or personally oppose mandatory punishments, we cannot say that 90 days does not meet generally accepted standards of decency. We are not authorized to simply convert our own views of what is wise policy into constitutional law.

■ Respondent also contends that the 90-day mandatory minimum violates the equal protection clause (Cal. Const., art. I, § 7, subd. (a)). We reject this contention for the same reasons set forth above as to the cruel or unusual punishment clause since, while we recognize that the two clauses have separate historical developments, we believe that the principle of proportionality applies to both contentions. There is no invalid classification because we are of the opinion that section 11550 does not punish status, but, rather, punishes acts. (See *People* v. *Omori* (1972) 25 Cal.App.3d 616, 618-619 [102 Cal.Rptr. 64]; *People* v. *Zapata* (1963) 220 Cal.App.2d 903, 905-907 [34 Cal.Rptr. 171].) There is no unequal treatment within proper classifications (see *People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 726 [135 Cal.Rptr. 392, 557 P.2d 976]). We agree with respondent that California equal protection analysis wherein one's "interest in liberty" is clearly recognized as a fundamental interest (*People* v. *Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375]; *Cotton* v. *Municipal Court* (1976) 59 Cal.App.3d 601 [130 Cal.Rptr. 876]) requires strict scrutiny and a compelling justification standard. However, we believe that when section 11550 is viewed in that light, as discussed

above under the first *Lynch* technique, that the state does have a compelling interest (deterrence, stalling the drug traffic, etc.) justifying the statute and the distinctions drawn by the law are necessary to the purposes of the statute. Furthermore, arguably the interest involved in the instant case is not a fundamental interest such as liberty, but rather "lack of sentencing discretion." In such a situation the proper standard is whether the challenged distinction rationally furthers some legitimate, articulated state purpose. (See *Commonwealth* v. *Jackson, supra,* 344 N.E.2d 166, at p. 175; see also *Commonwealth* v. *McQuoid* (1976) — Mass. — [344 N.E.2d 179].) California has a legitimate interest in deterring the use of opiates such as heroin. The imposition of a mandatory 90-day term bears a rational relationship to that goal and does not violate the equal protection clause.

■ Respondent has cross-appealed in this action to challenge section 11550 as being unconstitutionally vague. The trial court held that the word "use" did not have an uncertain meaning and that the section was therefore not deficient because of vagueness.

In *People* v. *Velasquez* (1975) 54 Cal.App.3d 695 [126 Cal.Rptr. 656], a section 11550 conviction was reversed because the arrest occurred five to seven days after the use of the drug. The court stated that "use" referred to a "current use" rather than a past use and that the People failed to prove that defendant had used heroin immediately prior to the arrest. The implication from this opinion is that in order to secure a conviction under section 11550 the People must show that the defendant had used a controlled substance immediately prior to the arrest. "A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. (*People* v. *Yoshimura* (1976) 62 Cal.App.3d 410, 414 [133 Cal.Rptr. 228].) "Reasonable certainty is all that is required." (*People* v. *Superior Court (Hartway)* (1977) 19 Cal.3d 338, 345 [138 Cal.Rptr. 66, 562 P.2d 1315].) The word "use," when combined with the time implications of *People* v. *Velasquez, supra,* is not so vague that one must guess at its meaning.

We hold that section 11550 is not unconstitutional for vagueness.

The judgment is affirmed insofar as it holds section 11550 not to be vague, but is reversed insofar as it holds section 11550 unconstitutional as

a violation of the cruel or unusual punishment clause or the equal protection clause.

Franson, Acting P. J., and Tuttle, J.,* concurred.

The petition of the plaintiff and appellant for a hearing by the Supreme Court was denied March 23, 1978. Tobriner, J., and Newman, J., were of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.